IN THE UNITED STATES BANKRUPTCY COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| IN RE: | * | |
| ROBERT W. FOLTZ, | * | Chapter 7 |
|     Debtor | * | |
| | * | Case No.: 1-90-00280 |
| ROBERT W. FOLTZ, | * | |
|     Plaintiff | * | |
| | * | |
| v. | * | Adv. No.: 1-04-00188A |
| | * | |
| UNITED STATES OF AMERICA, | * | |
| INTERNAL REVENUE SERVICE, | * | |
|     Defendant | * | |

## OPINION

Before the Court is the Complaint of Robert W. Foltz ("Debtor") against the United States of America, Internal Revenue Service ("IRS") alleging that the IRS violated the discharge injunction by assessing and attempting to collect certain trust fund recovery penalties against him. Debtor seeks sanctions for civil contempt for these alleged violations of the discharge injunction. Foltz and the IRS submitted undisputed stipulations of facts, and both parties have moved for summary judgment. For the reasons that follow, summary judgment will be denied to the IRS. Summary judgment will be granted in favor of Debtor on the issue of whether the discharge injunction was violated by certain stipulated actions taken by the IRS. Summary judgment will be denied to Debtor as to other actions that the IRS has disputed. The Court will schedule further proceedings to take evidence on the disputed matters and on the issue of damages.[1]

---

[1] This Court has jurisdiction pursuant to 28 U.S.C. §§157 and 1334. This matter is core pursuant to 28 U.S.C. §157(b)(2)(A) and (O).

1

**Factual Findings**

On December 29, 1986 and September 25, 1989, the IRS assessed trust fund recovery penalties against Debtor based on employee withholdings that York Finishing Systems ("York Finishing") failed to remit to the IRS.[2] On February 23, 1990, Debtor filed a petition under Chapter 13 of the Bankruptcy Code. The initial Chapter 13 plan filed in the case on March 20, 1990 provided for the payment of all priority taxes and listed the IRS as a creditor in an estimated amount of $40,000. The IRS filed a proof of claim in Debtor's case on April 30, 1990 in the amount of $29,669.62 for trust fund tax penalties that had been personally assessed against Debtor for unremitted withholdings for York Finishing. The Court confirmed Debtor's Chapter 13 plan on December 27, 1991, and the Chapter 13 trustee filed a schedule of distribution on June 12, 1992. The schedule of distribution reported that the trustee would make payments to the IRS in an allowed amount of $29,669.62.

On November 9, 1994, almost three years after confirmation, Debtor filed an amended Chapter 13 plan that contained the following provision: "Debtor will be responsible for payment of 1/3 of corporate liability for which he has been assessed as a personally responsible officer." The IRS did not object to the amended plan, and it was confirmed on December 27, 1994. The trustee's final report stated that the allowed claim of the IRS was $9,668.86 and that the claim was paid in full. Debtor received a discharge on June 28, 1995.

On March 25, 1996, the IRS assessed a trust fund recovery penalty in the amount of $48,157.85 against Debtor for withholdings that Yorktowne Construction, Inc. ("Yorktowne")

---

[2]Although not addressed in the parties stipulation of facts, Debtor's Statement of Financial Affairs filed March 20, 1990 stated that Debtor was a shareholder and corporate officer of Yorktowne Construction and York Finishing Systems.

had failed to remit to the IRS in 1988 and 1989 (hereinafter "Yorktowne penalty"). Since the taxes were not assessed until after Debtor received his discharge, no proof of claim for these prepetition contingent liabilities was filed in the bankruptcy case.

On April 22, 1996, the IRS sent Debtor a "final notice" of intent to levy in furtherance of collection of the Yorktowne penalty followed by another "final notice" on March 12, 2001.[3]

### Discussion

Under Fed.R.Civ.P. 56, summary judgment may be entered only if the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material facts and that the moving party is entitled to judgment as a matter of law. All doubts as to the facts must be resolved in favor of the non-moving party. *Kornegay v. Cottingham*, 120 F.3d 392, 395 (3d. Cir. 1997). The motions for summary judgment filed by both parties will be considered under this standard.

A bankruptcy discharge "operates as an injunction against the commencement or continuation of an action, the employment of process, or an act, to collect, recover or offset any [discharged] debt as a personal liability of the debtor . . . ." 11 U.S.C. §524(a)(2). A bankruptcy court may enforce the injunction provided by Section 524 by imposing sanctions against a creditor who violates the injunction. *In re Fluke,* 305 B.R. 635, 644 (Bankr. D. Del. 2004); *In re Thibodaux*, 201 B.R. 827 (Bankr. N.D. Ala. 1996); *In re Jones,* 164 B.R. 543 (Bankr. N.D. Tex. 1994). Sanctions imposed by the court may include costs, attorneys' fees, and compensatory and

---

[3]The Complaint alleges that the IRS also setoff Debtor's personal income tax refunds for 1995 and 1996 in an attempt to collect the Yorktowne penalty. In its Answer, the IRS denies that a setoff occurred, but the parties' stipulation does not address this allegation. Thus the Court cannot make a finding of fact at this juncture regarding whether the setoff occurred or not.

punitive damages. *Fluke,* 305 B.R. at 644. Civil contempt sanctions may be granted when three elements have been established: (1) a valid order has been entered; (2) the person to be charged with contempt has actual knowledge of the order; and (3) the person has disobeyed the order. *In re Cont'l Airlines, Inc.,* 236 B.R. 318, 330 (Bankr. D. Del. 1999).

In the instant case, there is no dispute that a valid order of court was issued on June 28, 1995 discharging Debtor from personal liability on all pre-petition debts provided for in Debtor's plan other than those excepted under 11 U.S.C. § 1328(a). There also is no dispute that the IRS had actual knowledge of the discharge order. The issue now before the Court is whether the IRS disobeyed that order by issuing the notices of intent to levy against Debtor for prepetition taxes assessed after Debtor received his discharge.

The IRS asserts that since the civil penalty for the Yorktowne taxes was not assessed until after the discharge was entered, the debt was not subject to Debtor's plan. Therefore, the IRS argues, since the Yorktowne penalty was not discharged, the IRS did not violate the discharge order by proceeding to collect the debt. In support of this assertion, the IRS focuses on Debtor's use of the present perfect tense in connection with the assessment of taxes to be paid through his amended plan. Specifically, the IRS asserts that since the amended plan provided that Debtor would "be responsible for payment of 1/3 of corporate liability for which he *has been assessed* as a personally responsible officer," Debtor's plan did not address the Yorktowne penalty, which was not assessed until after the discharge order was entered. The amended plan clearly states that Debtor will pay one-third of the liabilities he incurred as a corporate officer as of the date of the filing of the amended plan. The effect of this provision on prepetition, contingent tax obligations is less clear. I believe it would be inappropriate to resolve this matter based upon a narrow

4

reading of the provision in the amended plan without consideration of other issues.

Whether a claim has been "provided for in the plan" has been interpreted broadly by the courts. *See Rake v. Wade,* 508 U.S. 464, 474 (1993)("provided for by the plan ... is commonly understood to mean that a plan "makes a provision" for, "deals with," or even "refers to" a claim). Especially with regard to tax debts, many courts focus simply on whether the taxing authority had notice of the filing of the plan.

> A debt is "provided for" by a Chapter 13 plan where the plan acknowledges the debt, even if the plan does not propose to make any payments on the claim. *In re Gregory,* 705 F.2d 1118, 1122 (9th Cir. 1983). Further, in order to provide for an unsecured tax claim, the plan itself does not always have to specifically name the governmental creditor. Instead, it may be "sufficient if the plan provides for full payment of priority unsecured claims and payment of some percentage on nonpriority unsecured claims." *In re Ryan,* 78 B.R. 175, 177-78 (Bankr. E.D. Tenn. 1987); *see also In re Vlavianos,* 71 B.R. 789, 792- 93 (Bankr. W.D. Va. 1986).

*In re Hairopoulos*, 118 F.3d 1240, 1243 -1244 (8th Cir. 1997).

Debtor's first plan provided for payment of all priority claims in full and estimated those claims in his schedules to be $40,000. Adequate notice of the filing was provided to the IRS, which filed a proof of claim for unpaid prepetition trust fund taxes attributable to York Finishing, but not for prepetition taxes related to Yorktowne. In his schedules, Debtor disclosed his relationship to both corporations and provided for liabilities owed to the IRS in his plan without reference to the source of the liability.

A governmental entity is required to file a proof of claim within 180 days of the entry of an order for relief. 11 U.S.C. § 502(b)(9). In the instant case, the deadline for the IRS to file a proof of claim was August 22, 1990. The IRS was aware of the filing and promptly filed a proof of claim on April 30, 1990. The plan was confirmed thus binding the parties to its terms. When

Debtor moved to amend the plan in 1994, the IRS would have been barred from filing a proof of claim alleging a new unrelated debt after confirmation of the plan. Further, it is clear that the plan was amended to provide that Debtor no longer would be paying the full amount of the allowed tax claim and intended to pay only one-third of the assessed penalty.[4]

Facts similar to the instant case were present in *Thibodaux*, *supra* and *In re Lee*, 184 B.R. 257 (W.D. Va. 1995). In both cases the IRS was scheduled as a creditor as to certain tax liabilities, but failed to file timely proofs of claim as to trust fund taxes. In *Lee*, the District Court determined that the debt was incurred prepetition, that the IRS was notified of the case and that the government filed a proof of claim for other tax obligations. Therefore, the trust fund taxes were discharged upon completion of the debtor's plan. The bankruptcy court in *Thibodaux* found that it could not "excuse" the IRS for neglecting to file a timely proof of claim. *Thibodaux*, 201 B.R. at 831. "When the government is scheduled as a creditor, and the plan provides for any prepetition tax debt for which a proof of claim is filed, the government must determine what prepetition taxes are owed and file a proof of claim . . . . Otherwise, the prepetition tax debt will be discharged *without payment* if debtor completes the plan. *In re Ryan*, 78 B.R. 175, 181 (Bankr. E.D. Tenn. 1987).

In the instant case, at the time the deadline expired for the IRS to file proofs of claim, the proposed plan provided for the payment of all priority claims (without specific reference to trust fund claims), and the schedules listed the IRS as a creditor. The IRS filed a timely proof of claim

---

[4]No evidence was introduced to explain why the tax liability was reduced to one-third of the amount of the allowed priority claim. One basis for modification of a plan after confirmation is to "alter the amount of the distribution to a creditor whose claim is provided for by the plan to the extent necessary to take account of any payment of such claim other than under the plan." 11 U.S.C. § 1329(a)(3). Whether this was the purpose of the amendment is purely speculative. It is clear, however, that the IRS received notice of the proposed amendment and did not object.

for the unpaid withholding taxes attributable to York Finishing, but did not file a claim for taxes related to Yorktowne. Under *Hairopoulos*, the Yorktowne claim was "provided for" by the initial plan, and the IRS failed to file a timely proof of claim. Therefore, the language of the amended plan is irrelevant to the resolution of this matter. To rule otherwise would encourage the IRS to delay making responsible party assessments in order to avoid being bound by the terms of a plan.

> To effectively allow a tax creditor's claim to be held nondischargeable because, for whatever reason, the creditor failed to file a proof of claim or filed an untimely proof of claim, subverts the Chapter 13 process. It undermines the binding effect and finality of orders of confirmation entered pursuant to 11 U.S.C. §1327, which binds the debtor and all its creditors.

*In re Leber*, 134 B.R. 911 (Bank. N.D. Ill. 1991). Therefore, I find that the Yorktowne penalty was discharged when Debtor received his personal discharge in 1995.

The issuance of a "notice of intent to levy" by the IRS is an act to collect a debt and constitutes a violation of the discharge injunction. *In re Germaine*, 152 B.R. 619 (9th Cir. BAP 1993). Having admitted that it sent Debtor the notice at issue after the discharge was entered, the IRS has effectively admitted that it is subject to sanctions. The proper amount of such sanctions, however, cannot be calculated on the instant record. Therefore, a hearing will be set to take evidence on the issue of damages and on the issue of whether the IRS setoff of Debtor's income tax refunds violated the discharge injunction.

An appropriate order will be entered.

BY THE COURT,

*Mary D. France*
Bankruptcy Judge

Date: March 3, 2005

*This electronic order is signed and filed on the same date.*